THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, MAYAGÜEZ PART, ÁNGEL FIOL NEGRÓN, JUDGE, Respondent; EMILIA DETRÉS GALARZA, Intervener.

No. 2336. Submitted May 8, 1958.—Decided June 20, 1958.

*J. B. Fernández Badillo, Attorney General, Arturo Estrella, Fiscal of the Supreme Court,* for petitioner. *José R. Gelpí* for intervener.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

At the request of the prosecuting attorney, we issued certiorari to review an order of the Mayagüez Part of the Superior Court, which declared null and void a certain search warrant and suppressed the evidence obtained in the execution thereof. The facts occurred in a prosecution against Emilia Detrés Galarza (M-56-145) for a violation of Act No. 220 of May 15, 1948, 33 L.P.R.A. § 1247, commonly known as *Bolita* Act. On May 8, 1956, detective Julio Colón Sánchez appeared in Mayagüez before the justice of the peace, Luis Acevedo Acevedo, who, on an affidavit of the former, issued on the same date and place a search warrant against Emilia Detrés.

The defendant moved for the nullity of the search warrant and the suppression of the evidence obtained in the execution thereof alleging, among other reasons, that Acevedo, justice of the peace "*of Rincón,*" was without legal authority to act in Mayagüez, nor could he be designated by the Chief Justice of the Supreme Court to exercise his functions in that municipality. In the course of the trial, the parties stipulated as follows:

"PROSECUTING ATTORNEY: Then, let it be understood that the said Luis Acevedo, judge of the Justice of the Peace Court of Puerto Rico, Rincón Part, went, rather came to Mayagüez, to act as substitute justice of the peace, and in that capacity he investigated Mayagüez cases, issued search warrants, and made determinations of probable cause in cases of arrest. That is a fact.

"LIC. GELPÍ: There is no objection that the stipulation be approved in that manner. It was also stipulated that on the date of issuing this order . . . he was not an attorney.

"THE COURT: Is it the contention of the attorney for the defense that a justice of the peace is not authorized to issue search warrants and that he could not issue them?

"LIC. GELPÍ: That he could not issue the same. The stipulation, as made, is that he was here in his capacity as justice of the peace to perform the functions of a justice of the peace."

In deciding the issue raised, the respondent judge, after postponing the continuation of the hearing in order to consider the matter, stated as follows as it appears from the transcript of the proceedings:

"The Court rules as follows:

"The Court is of the opinion that, according to the Judiciary Act of 1952 in relation to the provisions of § 4 of the Organic Act of the Legislature (*sic*) of 1950, a justice of the peace assigned to a part or division or particular place cannot be designated to act or work in another place where no section has been created for a Justice of the Peace Court; in other words, that since § 4 of the 1950 Act provides that there shall be a section of the Justice of the Peace Court in those municipalities not the seat of one or more sections of the Municipal Court, now District Court, and there being in Mayagüez, or since Mayagüez is the seat of two sections of the District Court, formerly Municipal Court, an additional section of the Justice of the Peace Court can not be created in the city of Mayagüez, by temporary appointment or otherwise, by the acts of a judge.

"I therefore believe and conclude that the search warrant issued in this case on May 8, 1956 by Luis Acevedo Acevedo, Justice of the Peace of Rincón, acting in the Mayagüez Section of the District Court, and designated to that section of the District Court in a more or less indefinite capacity, was without authority to issue such search warrant and that the same is therefore null and void.

"It is ordered and directed that any object, article, or material seized by virtue of the said search warrant in this case be suppressed and not introduced in evidence in this proceeding."

The problem involved is whether, under the legislation in force at the time the search warrant was issued, May 8, 1956, Judge Acevedo could exercise his functions as justice of the peace in the manner he did, as well as whether his acts and his designation to act as justice of the peace in the municipality of Mayagüez, the seat of two sections of the District Court, are valid. The question for decision is clearly one of interpretation of statutes. Although it will be decided in the light of the Judiciary Act of the Commonwealth of Puerto Rico—Act No. 11 of July 24, 1952, 4 L.P.R.A. § 1—yet it must be approached from the year 1950 when the Organic Act of the Judiciary of Puerto Rico was enacted—Act No. 432 of May 15, 1950—because it was under this legislation that our present judicial organization began to exhibit certain lines of flexibility. *Cf. Rodríguez* v. *Registrar*, 75 P.R.R. 669; *Suliveres* v. *Arjona*, 76 P.R.R. 859.

Act No. 432 of 1950 (Sess. Laws, p. 1126) constituted Puerto Rico into a single judicial district and provided that the courts of justice shall exercise their jurisdiction over all of the territory included in the only judicial district. It created the Justice of the Peace Court as a court of justice, together with the Municipal Court, the District Court, and the Supreme Court. It provided that there shall be a "*section*" of the Justice of the Peace Court in each municipality not the seat of one or more sections of the Municipal Court. We must not overlook this last provision since it has a significant bearing on the problem before us. Every "*section*" of the Justice of the Peace Court had power to take cognizance of: (a) violations of municipal ordinances *of the municipality where such "section" is located;* (b) misdemeanors *committed within* the municipality in which the "*section*" is located, punishable by a fine of not more than $30 or imprisonment for not more than 30 days; and (c) all other matters in which exclusive or concurrent jurisdiction was conferred by law upon the Justice of the Peace Courts ex-

isting at the time the said Act No. 432 took effect.[1] Act No. 432 of 1950 created 42 offices of justices of the peace, each judge with power to take cognizance of any cause under the jurisdiction of the Justice of the Peace Court which, as we have seen, included the whole island of Puerto Rico as a single district. He was also vested with power to act as committing magistrate in felony cases, to fix and accept bail, and to exercise the same powers, duties, and functions of the justices of the peace appointed under prior legislation.

Although the Organic Act of the Judiciary of 1950 initiated a public policy tending to make the judicial organization a more flexible and pliable instrument in its administrative functions, there still remained traces of the severe old system. Thus, for example, this statute vested the then Attorney General with power to designate the *sections* and *districts* [2] of the courts in which judicial officers were to serve, but it provided, however, that the designation of justices of the peace, municipal and district judges, and of certain officers would be made with a *permanent character* for the term for which they were appointed. In other words, the stability of the previous system was preserved in this respect. Only in the cases mentioned in § 37 of Act No. 432, among others, resignation, absence, inability to act, leave, or accumulation of judicial work, could judges be designated

[1] The office of Justice of the Peace was created by § 14 of "An Act to establish a Code of Criminal Procedure for Puerto Rico," approved March 1, 1902. The Governor was authorized, with the consent of the Executive Council, to appoint as many justices of the peace in the judicial districts of Puerto Rico as he may deem pertinent. He was constituted a magistrate with power, among other things, to issue warrants of arrest; to fix and accept bails; to administer oaths in the causes or proceedings pending before him, and in all other cases in which it may be necessary in the exercise of his authority and duties; to punish for contempt of his authority; to take cognizance of all misdemeanors punishable by fine not exceeding $250 or imprisonment for not more than six months, as well as violations of municipal and police ordinances. This justice of the peace substituted the Police Court created by General Order No. 195 of November 29, 1899 in every municipality where there was a Municipal Court, which in turn was created by General Order No. 118 of August 16, 1899 in each

to render services in other *sections* or *districts* for periods not exceeding 90 days. This designation, of a temporary character only, could be made by the Chief Justice of the Supreme Court on petition of the Attorney General. And more particularly as to the jurisdiction of the Justice of the Peace Court, a territorial demarcation for each *section* remained unaltered limiting such jurisdiction in cases of violations and offenses. When Act No. 432 of 1950 became effective the only Justices of the Peace who continued to hold office, for the remainder of the term for which they were appointed, were the justices of the peace of municipalities where *sections* of the Justice of the Peace Court were to function under this Act. The others were abolished.

Let us consider next the Judiciary Act of 1952. This Act preserved, as before, one single judicial district formed by the whole island of Puerto Rico. To substitute the former District and Municipal Courts, it created the Court of First Instance consisting of the Superior and the District Court, respectively, and it established *parts* of the Court of First Instance under the same geographic distribution as the parts of the substituted courts. *Act No. 11 of July 24, 1952, § § 1, 9, 11, 16* (4 L.P.R.A. §§ 1, 61, 91, 151). Regarding the

---

of the municipalities mentioned in this order. By the Act of March 10, 1904, which reorganized the judiciary, the offices of justice of the peace and of municipal judge then existing were abolished and there was created the office of municipal judge. However, by that Act the office of justice of the peace was re-created in San Juan, Ponce, and Mayagüez and in the other municipalities, except in districts with a municipal court in which there was only one town. This newly created justice of the peace was vested with jurisdiction in all cases in which the punishment imposed did not exceed a fine of $15 or imprisonment of 30 days, and in all cases of violations of municipal ordinances. They could also act as committing magistrates. Ever since the Code of Criminal Procedure was adopted in 1902, the justices of the peace were vested with power to issue search warrants and to take cognizance of other incidents relating to their execution. The budget acts for 1949–50 and 1950–51 made appropriations for the justice of the peace courts in 53 municipalities and in Culebra.

[2] This term does not have the same meaning as the "division" of the Court of First Instance under the Judiciary Act of 1952. 4 L.P.R.A. § 61.

Justice of the Peace Court, the 1952 Act provided that there shall be "as heretofore" 42 justices of the peace, each judge with power to exercise all functions and powers of judicial authority exercised by the justices of the peace at the time the said Act took effect and, specifically, the function and power to fix and accept bails and to issue warrants for arrest, for search and seizure, but without power to adjudicate cases.[3]

The Justice of the Peace having been divested of the power to pass judgment and adjudicate cases, there was no longer any reason for the existence of its different *sections*, each with its specific demarcation, as established by the 1950 Act, which conferred jurisdiction on the Justice of the Peace Court only over such offenses or violations committed within those municipalities where such sections were constituted under the 1950 Act. In view of the fact that those sections were obviously unnecessary and, on the other hand, that the 1952 Act did not create any particular subdivision within the only judicial district in which the Justice of the Peace would continue exercising those functions of the judicial authority of which it was not deprived, we conclude that, as a matter of law, the Justice of the Peace Court may validly exercise such functions in any point within the geographical territory of Puerto Rico. As a matter of fact, to insure an efficient and orderly administration of justice, the justices of the peace are designated by the Chief Justice of the Supreme Court to a particular place or demarcation within the judicial district, as the needs of the work and the necessary distribution thereof may require, under the authority which the Chief Justice unquestionably derives from the

[3] Section 22 of the 1952 Act provided that the justice of the peace may not adjudicate cases cognizable by the District or Superior Courts. In view of the jurisdiction vested in the District Court by § 18, the justice of the peace lost all power to pass judgment and adjudicate cases.

Constitution to direct the administration of the courts.[4] Problems like those involved in *Figueroa* v. *District Court*, 72 P.R.R. 23; *People* v. *Tonje*, 71 P.R.R. 295; and *Partido Popular* v. *Gallardo*, 56 P.R.R. 677, are of no concern in this case.

It appears from the proceedings had that Acevedo was acting as substitute justice of the peace in Mayagüez when he issued on May 8, 1956, the search warrant in question. As justice of the peace of Puerto Rico, Acevedo could validly exercise his functions in Mayagüez and there issue a search warrant, and he could have been rightly assigned to that municipality by the Chief Justice of the Commonwealth, notwithstanding the fact that two sections of the District Court had, and still have, their seat in Mayagüez. See Clark and Rogers, *The New Judiciary Act of Puerto Rico: A Definite Court Reorganization*, 61 Yale L.J. 1147. Such was the spirit of the reform.[5]

---

[4] *Constitution of the Commonwealth of Puerto Rico, Art. V, § 7.* The power of administration vested in the Chief Justice includes the power to assign and transfer judges. See *Report of the Judicial Branch Committee to the Constituent Assembly.* In accordance with *§ 10 of Art. II* of our Constitution, to order arrests, searches and seizures is exclusively a judicial function.

The purpose of the power conferred on the Governor by § 21 of the Judiciary Act of 1952, to designate a person to substitute a justice of the peace in case the latter is unable by reason of sickness, absence, or other disability to perform the duties of his office, was to maintain the complete number of justices of the peace retained in active work.

[5] The record makes reference to Acevedo as justice of the peace of Rincón. We take judicial notice that on April 16, 1952 he was appointed justice of the peace by the Governor for a term of four years. According to § 37 of Act No. 432 of 1950, which was in force at the time of the appointment, Judge Acevedo was assigned by the Attorney General to a *section* of the Justice of the Peace Court, presumably Rincón. When the Judiciary Act of 1952 took effect shortly thereafter, and the *sections* of the Justice of the Peace Courts were abolished, Acevedo remained in his office of judge, both under § 21 of this Act and by constitutional provision (*Constitution, Art V, § 13*), which provides that in the event a court or any of its *divisions* or sections *is changed* or abolished by law, the person holding a post of judge therein shall continue to hold it during the remainder of the term for which he was appointed "and shall perform the functions assigned to him by the Chief Justice of the Supreme Court."

In view of the foregoing considerations, the order of the Mayagüez Part of the Superior Court declaring null and void the search warrant issued on May 8, 1956 by justice of the peace Acevedo and by virtue of which the evidence obtained through said warrant was suppressed, is untenable at law. Such order is set aside and the record of case M–56–145, *The People of Puerto Rico* v. *Emilia Detrés*, is remanded to the court below for further proceedings not inconsistent with this opinion.